## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

DIANE WASSER,

                       **Plaintiff,**

-vs-                                                **Case No.  6:12-cv-1399-Orl-31DAB**

COMMISSIONER OF SOCIAL
SECURITY,

                       **Defendant.**

_____

### REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.

For the reasons that follow,  it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

## I.  BACKGROUND

### A.  Procedural History

Plaintiff filed for a period of disability and disability benefits on June 10, 2009 and SSI benefits on July 1, 2009, alleging in both applications an onset of disability on January 27, 2008 due to cervical disc herniation, lumbar disc herniation, arm pain, leg pain, knee pain, and epilepsy.  R.

152-56, 189-95, 198-200, 206-14, 218-25, 227-34, 252-58. Her application was denied initially and upon reconsideration. R. 77-82, 89-92. Plaintiff requested a hearing, which was held on November 13, 2010, before Administrative Law Judge Joseph L. Brinkley (hereinafter referred to as "ALJ"). R. 13-27. In a decision dated February 2, 2011, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 10-32. Plaintiff timely filed a Request for Review of the ALJ's decision, which the Appeals Council denied on August 13, 2012. R. 1. Plaintiff filed this action for judicial review on September 12, 2012. Doc. 1.

### B. Medical History and Findings Summary

Plaintiff was born on August 12, 1970; she has a high school education, some college course work, and past work as a hair stylist. R. 25, 40, 152, 182-94. Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of cervical disc herniation, lumbar disc herniation, arm pain, leg pain, knee pain, and epilepsy. R. 152, 189-95, 198-200, 206-14, 218-25, 227-34, 252-58. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from cervical disc herniation, lumbar disc herniation, status post fracture of the left foot and right arm, as well as a left knee avulsion, and epilepsy, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 15. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform a reduced range of light work with additional limitations. R. 17. The ALJ found Plaintiff could lift and/or carry ten pounds frequently and twenty pounds occasionally; sit six hours out of an eight-hour workday; and stand and/or walk six hours out of an eight- hour workday; push and/or pull with the same limitations as lifting and carrying without significant limitations; occasionally climb stairs; occasionally balance, stoop, kneel, crouch and crawl; and perform frequent overhead reaching; she

should avoid climbing ladders, ropes or scaffolds, hazards (including machinery and unprotected heights) and concentrated exposure to vibration.  R. 17.

Based upon Plaintiff's RFC, the ALJ determined that she could not perform her past relevant work.  R. 25. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as a ticket taker, cashier, and office helper.  R. 26. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision.  R. 26.

Plaintiff asserts a single point of error, *i.e.,* the ALJ erred in giving greater weight to the opinions of the non-examining state consultants than those of Plaintiff's treating or examining physicians.  For the reasons that follow, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

## II.        STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

## III.    ISSUES AND ANALYSIS

### A.    RFC and the treating physicians' opinions.

Plaintiff claims that the ALJ erred in assessing the opinions from Plaintiff's treating physicians, and in giving greater weight to the opinions of the non-examining state consultants. Plaintiff argues the opinions from Dr. Portee, the National Pain Institute, and Dr. Shea agreed in

support of disabling limitations[1] but the ALJ did not apply the correct legal standards to these opinions, and instead gave great weight to the opinion of a non-examining state consultant.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). Under the regulations, a one-time examining physician's opinion is generally given more weight than a non-examining source's opinion with consideration given to other factors such as: supportability, consistency, specialization and other factors. See 20 C.F.R. § 404.1527(c), § 416.927(c).

The Eleventh Circuit has held that "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. . . . [W]hen the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,' we will decline to affirm 'simply because some rationale might have supported the ALJ's conclusion.'" *Winschel v. Comm'r of Social Security*, 631

---

[1]Plaintiff does not challenge the ALJ's finding with regard to the severity of her seizure disorder or any mental limitations.

F.3d 1176, 1179 (11th Cir. 2011) (citations omitted). Although a consultative examiner who examines a claimant on only one occasion is not entitled to deference of a treating physician, "under *Winschel*, the ALJ still must set forth with particularity the weight [he] assigned to this opinion and the rationale for the rejection of the most significant findings." *Hoehn v. Comm'r of Soc. Sec.*, No. 6:10-cv-262-Orl-DAB, at *6 (M.D. Fla. June 21, 2011).

### A.  *Dr. Portee/ORMC Records*

Plaintiff contends that the ALJ erred in failing to state what weight he gave Dr. Portee's opinion, in violation of *Winschel*.  The Commissioner argues that the ALJ acknowledged the diagnosis of Dr. Portee (without attributing it to him specifically) and the opinion is not entitled to significant weight. R. 20.

Most of Plaintiff's medical treatment arose out of two car accidents she had about a year apart. On January 28, 2008, Plaintiff was treated at Florida Hospital following a car accident. R. 206, 297-302. She began seeing Dr. Mladen Antolic who treated her and noted limited lumbar range of motion with 4/5 muscle strength.  R. 266-67.  On February 8, 2008, an MRI of the cervical spine revealed evident straightening of the cervical spine suggestive of underlying muscle spasm, large posterior disk herniations with cord compression and associated radial tears at C3-4 and C5-6, disk bulging at C4-5 and C6-7 and neural encroachment. R. 282-83.  An EMG test confirmed right carpal tunnel syndrome. R. 278-79.  Dr. Antolic prescribed Xanax and Oxycodone. R. 274-78.  On June 10, 2008, Dr. Antolic/ released Plaintiff from his care.  R. 271.  As the ALJ described it:

> Without minimizing the MRI findings, it appears to the undersigned that the claimant benefitted from a maintenance program and use of medication for pain management. She also had range of motion to proceed in forward flexion to 0-35 degrees, extension to 0-25 degrees and left and right lateral bending to 0-25 degrees. The claimant got to the point where she continued to present with the same symptoms despite her treatment regimen, and treating sources at Midflorida Injury Rehab [Dr. Antolic] released the claimant from its care on the basis that they were without recourse to provide further care for the claimant's continued symptomatology. In reviewing the treatment notes that were provided by this provider for the noted treatment period, the

record fails to establish that the claimant's medical condition had worsened to the point it required surgery.

R. 22.

On September 8, 2008, Plaintiff was treated at the Florida Hospital emergency department, after reportedly having taken too much Xanax and Oxycodone.  R. 289-92.  Plaintiff reported taking the medication while celebrating her release from jail and denied any suicidal ideation.  R. 290.  On January 7, 2009, it was noted that Plaintiff had undergone a right carpal tunnel release, and she reported a 60 percent improvement in her pain level with no medication side-effects.   R. 463.  Plaintiff's prescriptions were changed to Valium, Oxycodone, and Ibuprofen (800 mg).  R. 466.

On May 9, 2009, as a pedestrian crossing a busy street, Plaintiff was struck by a car and sustained a fractured right arm, fractured left foot, right tibia and left knee avulsion; her right foot was almost amputated, her right tibia was replaced with a titanium bar, and her ankle was repaired with screws; her right arm also has a stainless steel plate in it. R. 306-25. Plaintiff underwent surgery at Orlando Regional Medical Center and was discharged to a rehabilitation facility. R. 306-25.  She underwent full-time rehabilitation and was released on May 27, 2009. R. 335-45.  At the time she was discharged on May 27, 2009[2], Dr. David Portee diagnosed Plaintiff with "gait disturbance and disability subsequent to automobile versus pedestrian accident."  R. 337.

Plaintiff argues that Dr. Portee's opinion of "gait disturbance and disability" is important because it "supports a disabling level of functioning and the severity level of Plaintiff's impairments" as she testified.  Plaintiff also argues that, although Dr. Portee's opinion was about disability, an issue reserved for the Commissioner, Social Security Ruling 96-5p requires that "opinions from any medical source about issues reserved to the Commissioner must never be ignored" and "our rules provide that adjudicators must always carefully consider medical source opinions about any issue,

---

[2]Plaintiff was apparently in another car accident on November 17, 2009.  R. 206.

including opinions about issues that are reserved to the Commissioner," and the ALJ failed to include Dr. Portee's opinion in his analysis.

The Commissioner argues that Dr. Portee's indication of "disability" is a conclusory opinion on an issue reserved to the Commissioner and is not due any weight. *See* 20 C.F.R. § 404.1527(d), § 416.927(d). Social Security Ruling (SSR) 96-5p[3]. At the time of Dr. Portee made this diagnosis, the Commissioner argues, Plaintiff was being discharged from a rehabilitation facility just a few weeks after her accident (R. 306, 327), and when she subsequently began treatment with Dr. Kupiszewski, his records demonstrate gradual improvement in her ability for "normal ambulation," even if Dr. Kupiszewski did note residual weakness and decreased endurance at the end of his treatment. R. 378, 402-03.

The ALJ did in fact note the "assessment upon discharge" from Orlando Regional Medical Center ("ORMC"). While receiving treatment in the Emergency Department at ORMC, different physicians, including Dr. Portee on one occasion and Dr. Eddyme Danger on another occasion, mentioned in the Assessment/Diagnosis sections "gait imbalance and disability secondary to car versus pedestrian motor vehicle crash" R. 339. The ALJ did include the assessment from these doctors in his description of the E.R. medical records:

> In May 2009, as a pedestrian, the claimant was struck by a motor vehicle and sustained a fractured right arm, fractured left foot, right tibia and left knee avulsion. (Exhibits, 4 F/I-4, 13F/5, 8) She underwent related surgical repairs at Orlando Regional Medical Center and was discharged from that facility into Lucerne's rehabilitation unit on May 12, 2009. She underwent full-time rehab at that facility and did well. (Exhibit 5F/6).

> An examination of the claimant's neurologic symptoms shows that she demonstrated spontaneous movement in all the extremities. Her left upper extremity was full 5/5 power with normal bulk and tone, and her leg had SIS plantar and dorsiflexion. Distal grip and plantar dorsiflexion was good. While her right foot was not evaluated, she had no cyanosis, clubbing, or edema on that foot. Her assessments

---

[3]http://www.socialsecurity.gov/OP_Home/rulings/di/01/SSR96-05-di-01.html.

included gait imbalance and disability secondary to a [car] versus pedestrian [motor vehicle accident] and a history of epilepsy of suspected control. (Exhibit 5F/8).

R. 20.   Dr. Kupiszewski operated on Plaintiff in the hospital (R. 337) and she was eventually transferred to the rehabilitation unit at another hospital (Lucerne) after stabilization. R. 337.  Plaintiff continued treatment with Dr. Kupiszewski, with the Orthopedic Faculty Practice, and saw him on June 8, 2009, at a follow up appointment after the accident R. 386-88. Dr. Kupiszewski noted at that time Plaintiff had been somewhat non-compliant with her weight bearing status, and she had decreased range of motion with pronation simulation, and in the right lower extremity Plaintiff had decreased range of motion at the ankle.  R. 386.  Two months after the accident, on July 6, 2009, x-rays revealed that the right ulna and right tibia bones were healing, that her hardware remained intact, and that her right metatarsal fractures were healing well with good alignment.  R. 383-85.

The ALJ thoroughly and accurately discussed the treatment notes of Dr. Kupiszewski, who was actually Plaintiff's treating orthopedic surgeon:

> On June 8, 2009, Stanley Kupiszewski, M.D., with the Orthopedic Faculty Practice, saw the claimant for what would be her first postoperative visit with him. In documenting hr [sic] treatment history, Dr. Kupiszewski noted the claimant was sent to Lucerne for more rehabilitation and had been somewhat noncompliant with her weight bearing status. Dr. Kupiszewski noted the claimant cooperated well on physical examination and had a "positive thumbs up sign" on her right upper extremity. Although she had decreased range of motion with pronation simulation, the claimant's crossover sign and sensation was intact. At the right lower extremity, she had positive extensor hallucis longus, flexor hallucis longus and her sensation was intact. In addition, her knee was [a]bout 10-90 degrees, and her right lower extremity was neurovascularly intact, albeit she had some decreased range of motion at the ankle. On the left knee, the claimant presented with a positive varus and lateral collateral ligament stress test. Dr. Kupiszewski noted that xrays taken at Orlando Regional on May 27, 2009 showed that the claimant's hardware was intact in the right tibia with no signs of loosening and within normal recurvatum. (Exhibit 6F/13-15).

> Upon returning to Dr. Kupiszewski for a follow-up visit on July 6, 2009, x-rays showed that the claimant's right ulna and right tibia bones were healing, that her hardware remained intact and that her right metatarsal fractures were healing well with good alignment. (Exhibit 6F 110). Accordingly, treatment plans included a prescription for Percocet and having the claimant to continue with full weight bearing as tolerated. *Id.*

On August 24, 2009, Dr. Kupiszewski appeared pleased with the claimant's progress. He advised her to be full weight bearing as tolerated with respect to bilateral lower extremities and bilateral upper extremities. Moreover, he encouraged her to discontinue the use of a left knee Bledso brace and to wean out of the use of a right-sided Cam Walker. Indeed, Dr. Kupiszewski started the claimant with normal ambulation (although she could use a cane during the transition), and there is nothing in the record to suggest that Dr. Kupiszewski ever prescribed the claimant the use of a cane or walker to use permanently. (Exhibit 6F/7).

Five months post surgery, October 12, 2009, the claimant ambulated using only a crutch underneath her right arm. She could stand easily without the crutch, even though she had mild quadriceps and calf atrophy on the right-injured side. All incisions were benign, and she had excellent alignment without tenderness over the tibia fracture area. Her foot also had excellent alignment and minimal edema, and x-rays were essentially unremarkable. (Exhibit 8F/6). Clinically and radiographically, the doctor noted that the claimant was doing well, residual weakness and decreased endurance. Thus, treatment plans were reduced to providing the claimant with reassurance.

On October 24, 2009, the claimant followed-up with Dr. Kupiszewski. Consistent with prior goals of making the claimant become independent with ambulation, Dr. Kupiszewski advised the claimant to wean from the use of even a crutch to a cane as she is able- then to discontinue. Indeed, Dr. Kupiszewski's opinion was that the claimant would continue to experience improvement in strength and endurance with continued use. Accordingly, he reduced her follow up visits to as needed. (8F/5).

* * *

Although she sustained a fractured right arm, fractured left foot, right tibia and left knee avulsion when struck by a motor vehicle in May 2009, the claimant underwent related surgical repairs at Orlando Regional Medical Center and full time rehab at the Lucerne rehabilitation, and did well. . . . [W]ithin five months post MV A surgery, the claimant ambulated using only a crutch underneath her right arm. She could stand easily without the crutch, even though she had mild quadriceps and calf atrophy on the right-injured side. She has had excellent alignment without tenderness over the tibia fracture area, and her foot had excellent alignment and minimal edema. X-rays were essentially unremarkable. (Exhibit 8F/6).

By October 24, 2009, Dr. Kupiszewski advised the claimant to wean from the use of even a crutch to a cane, as she is able- then to discontinue. He opined that she would continue to experience improvement in strength and endurance. (8F/5). I assign great weight to Dr. Kupiszeski's opinion, as he treated the claimant over a longitudinal period of time, and his opinion is consistent with the totality of the evidence of record. (Exhibit 5F/6).

R. 20-24.  The ALJ properly evaluated the records from the E.R. at ORMC and the opinion of Dr. Kupiszewski as to Plaintiff's impairments, giving Dr. Kupiszewski's opinion "great weight" as consistent with the totality of the evidence of record.

B. *National Pain Institute Records*

Plaintiff argues that the ALJ mischaracterized records from the National Pain Institute ("NPI"), which she argues noted significant symptoms, a limited quality of life, and limited functional mobility "dozens of times" through the course of Plaintiff's treatment.  Plaintiff acknowledges that the ALJ noted the NPI records (R. 19), but, she argues, he improperly discounted them.  Plaintiff points to records documenting marked pain that was burning, sharp, and shooting; and symptoms aggravated by walking, standing, sitting, bending, lying down, and moving the neck; as well as tingling in the arms, hands and fingers.  R. 439, 445, 451, 457, 463, 471, 479, 489, 495, 501, 509, 517. Plaintiff points out that 2009 records of NPI noted that pain was moderate and continuous, and her "symptoms are aggravated by all activities" and "given the patient's diagnoses and persistent chronic pain they will continue to require high doses of opioid pain medications indefinitely to allow some quality of life and functional mobility."  R. 422-35, 442, 448, 453, 460, 466, 474, 482, 492, 498, 504, 512, 520.

The Commissioner argues that the ALJ properly considered the NPI records along with the other documentary evidence and Plaintiff's testimony, in his analysis of the pain standard. Doc. 19 (citing 20 C.F.R. § 404.1529, § 416.929; SSR 96-7p[4]).  The Commissioner contends that the ALJ properly considered Plaintiff's subjective allegations and after the reviewing the objective evidence concluded that her subjective allegations were not credible to the extent they are inconsistent with the ability to perform light work. Doc. 19 (citing R. 18-25).  The Commissioner cites other NPI records that reflect Plaintiff's statements in which she reported improvement in her pain level by 60 to 80

[4]http://www.ssa.gov/OP_Home/rulings/di/01/SSR96-07-di-01.html.

-11-

percent, and that the pain was "tolerable." R. 422-25, 439, 457, 463, 479, 489, 501.  Plaintiff also

confirmed experiencing no side-effects from medication. R. 422-25.  The Commissioner also argues

that the demonstrated gap in treatment from November 2009 through November 2010 indicates a lack

of severity in Plaintiff's symptoms.

The ALJ specifically discussed Plaintiff's treatment records from NPI:

> While the evidence received from the NPI shows underlying medically determinable impairments that are reasonably capable of producing some symptoms of pain and muscle spasms, it fails to establish that the symptoms significantly erode the claimant's ability to function. When treated at the NPI on May 20, 2008, the claimant had normal neck strength and tone and was only mildly restricted in all directions. In addition, her gait and station were intact, and she had only moderate generalized tenderness in the lumbar facet area. Her active lumbar flexion was from 0-50 degree, and her active lumbar extension was from 0-25 degrees. Moreover, as with her neck strength and tone, she had normal strength and tone of the lower extremity. Her sensory examination was also within normal limits in all extremities, and her deep tendon reflexes were 2+ and bilaterally symmetrical.

> Also, when she visited the NPI on July 15, 2008, the claimant rated the usual level of cervical pain at a 6/10 and worse level of pain at an 8/10, and rated the usual level of lumbar pain at a 2/10 and worse level at an 8/10. Meanwhile, physical therapy improved her ability to walk, stand, sit and bend. (Exhibit 9F/90) The claimant's rating of her average pain level appears inconsistent with a claimant normally experiencing incapacitating pain.  By November 12, 2008, when the claimant returned to the NPI for neurosurgery evaluation and treatment, her treatment appears to have essentially revolved around patient education with treatment directed towards increasing her ability to self-manage pain and related problems, by maximizing and maintaining optimal physical activities, function, and reducing the misuse, overuse or dependency on medication. (Exhibit 9F/71).

> Upon revisiting the National Pain Institute for medication renewal in May and July 2009, the claimant had had not had any new injuries, hospitalization or medical changes. Interestingly, *she reported a 60% improvement of pain* with her present medication regimen that consisted of Valium 5 mg every eight hours as needed and Oxycodone 30 mg every 6-8 hours as needed. The claimant reported level of improvement appears inconsistent with a claimant experiencing incapacitating pain (Exhibit 9F/22).

R. 22-23 (emphasis added).

Most of the records Plaintiff cites that mention "marked pain" are from the period in late 2008

to early 2009, *prior* to the time period the ALJ cites in his opinion. At Plaintiff's visit to NPI on May

29, 2009 she reported "improvement in her functional activity level" and "a 60% improvement of pain with the present medication regimen." R. 433.  On June 26, 2009 and July 24, 2009, the NPI doctors noted "she has pain everywhere" but it was "well controlled with current medications." R. 422, 428. In the "Response to Treatment" section, the doctor noted a 60% improvement with the medication regimen. R. 422, 428.  The ALJ's discounting of the NPI records was based on substantial evidence in the record.

C.  *Dr. Shea's Records*

Plaintiff also argues that the ALJ erred in assessing the opinion of Dr. James K. Shea, who performed a consultative examination of Plaintiff on December 3, 2010. R. 559.  Plaintiff also contends that the ALJ should not have given great weight to the opinion of the non-examining state physician because the opinion of a non-examining reviewing physician is entitled to little weight and, taken alone, does not constitute substantial evidence to support an administrative decision.  Plaintiff argues that the ALJ did not need to rely on the non-examining physician's opinion when he had treating and examining opinions. The Commissioner argues that the ALJ properly evaluated the opinion from Dr. Shea, a one-time examining physician and properly accorded greater weight to the opinion of the state agency reviewing physician, Dr. Molis[5].

Dr. Shea diagnosed Plaintiff with cervical disc herniations, lumbar disc herniations, and status post right ulnar fracture, tibia fracture, left foot fractures, and left knee ligament avulsion.  R. 564. He also found limited range of motion in the cervical spine and lumbar spine, that Plaintiff walked with a limp and had decreased cervical lordosis with associated moderate tenderness to palpation over the right cervical, trapezius and rhomboid muscles.  R. 559-67.  Dr. Shea noted significant range of motion limitations of the neck, with normal muscle bulk and tone of the upper extremities and

---

[5]The Commissioner concedes that one of the consultants was not a medical doctor and as such her opinion cannot be relied upon.  Doc. 19 (citing R. 389-96).

unremarkable motor examinations of the wrist, grip, hand, biceps, triceps and deltoid; significant lumbar range of motion limitations, with normal muscle bulk and tone of the lower extremities, and an unremarkable motor examination of the lower extremities.  R. 563-64.  Dr. Shea opined that Plaintiff could stand/walk two hours in an eight-hour workday; sit three hours in an eight-hour workday; never climb, balance, stoop, crouch, kneel and crawl; had limitations in reaching, handling, pushing/pulling; and should avoid heights, moving machinery, temperature extremes, humidity and vibration.  R. 565-67.

The Commissioner argues that the severity of limitations noted by Dr. Shea is also inconsistent with the improvement noted by Dr. Kupiszewski and National Pain Institute (R. 378, 401-03, 422-25), and the significant gap in treatment before she was examined by Dr. Shea in December of 2010.

Plaintiff argues that the ALJ improperly evaluated Dr. Shea's opinion and mischaracterized her own testimony in order to create contradictions with Dr. Shea's findings.  She testified when she does laundry, the next day she is "laid up" from her leg.  R. 54-55.  She reported she could do some household chores (R. 212), but was "physically unable" to do other household chores, personal care was "very difficult" (R. 198-199), and she could not do normal activities.  R. 228. Plaintiff argues that her limited ability to do basic daily activities actually supported Dr. Shea's opinion of significant limitations because a person with limited daily activities could still have the same limitations from Dr. Shea's opinion.

The ALJ accurately cited Dr. Shea's findings and specifically explained why he discounted Dr. Shea's opinion:

> Although Dr. Shea limited the claimant to less than a full range of sedentary work activity, I assign his opinion and associated limitations little weight to the extent they are inconsistent with the claimant's allegations and the objective evidence in the record. Even the claimant acknowledged that she is able to prepare simple meals and perform some household chores like dusting and folding clothes. (Exhibit 10E/4, 11E/4). She also acknowledged that she is able to handle personal care needs and activities of daily living independently. (Exhibit 10F/13). While Dr. Shea indicated that the claimant ambulated with a limp and had decreased cervical lordosis with

associated moderate tenderness to palpation over the right cervical par spinals, trapezius muscles and right rhomboid muscles, Dr. Shea failed to state that the claimant's conditions require her to walk with an assistive device any longer.

In addition, I note that the claimant's rating of her pain on an average day fails to support Dr. Shea's opinion that the claimant's level of pain is incapacitating. In addition to the above-discussed rationale, a September 2009 MRI showed improved or stable findings regarding the claimant's cervical disc herniations at the C3-4 and C5-6 levels, exception of mild disc bulging at C6-7 that increased in size since February 2008. (Exhibit 9F/118-119).   Although the claimant reported difficulty ambulating on her toes and heels during a physical examination, she was able to stand and ambulate with a normal gait. (Exhibit 2F/10) Although the findings on objective examination correlate with some limitations, I have accounted for all such restrictions in the residual functional capacity assessment. *In addition, the record tends to establish that the claimant's treatment has been routine and conservative in nature, and that she has benefitted from the maintenance program and use of medications for pain management.* (Exhibit 2F/5).

R. 24 (emphasis added).  Especially in light of the fact that as of mid to late 2009, the records from the NPI indicated that the medication had improved her pain by 60% (R. 433), and she had no further treatment from any other medical sources after December 2009, the ALJ's evaluation of Dr. Shea's opinion was based on substantial evidence.

## IV.   CONCLUSION

The record in this case shows that Plaintiff does not enjoy full health and that her lifestyle and activities are affected by her ailments to some degree.  The ALJ appropriately considered these circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act.  For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence.  Accordingly, it is respectfully **RECOMMENDED** that the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g) be **AFFIRMED** and the Clerk of the Court be directed to enter judgment consistent with this opinion and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on November 7, 2013.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy